# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

JASON CRUZ,

       Plaintiff,

v.                                Civil Action No: _____

EXPERIAN INFORMATION SOLUTIONS, INC.,
*Serve:* CT Corporation System
      4701 Cox Rd. Ste. 285
      Glen Allen, VA 23060-6808

EQUIFAX INFORMATION SERVICES, LLC,
*Serve:* Corporation Service Company
      100 Shockoe Slip Fl 2
      Richmond, VA 23219-4100


TRANS UNION, LLC,
*Serve:* Corporation Service Company
      100 Shockoe Slip Fl 2
      Richmond, VA 23219-4100

EDFINANCIAL SERVICES, LLC,
*Serve:* National Registered Agents, Inc.
      4701 Cox Rd., Ste. 285
      Glen Allen, VA 23060-6808

       Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, JASON CRUZ (hereinafter "Plaintiff"), by and through the

undersigned Counsel, and for his Complaint against Defendants, EXPERIAN INFORMATION

SOLUTIONS, INC. (hereafter "Experian"), EQUIFAX INFORMATION SERVICES, LLC

(hereinafter "Equifax"), TRANS UNION, LLC (hereinafter "Trans Union"), and EDFINANCIAL

SERVICES, LLC (hereinafter "EdFinancial")  Plaintiff alleges as follows:

1

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

2.      Today in America there are three major consumer reporting agencies ("CRAs"), Experian Information Solutions, Inc., Equifax Information Services, LLC and Trans Union, LLC.

3.      The FCRA demands of reporting agencies like Experian, Equifax and Trans Union, utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b). When a consumer disputes an item of information, the agency must investigate the dispute and, if the information cannot be verified, delete it. 15 U.S.C. § 1681i.

4.      Consumer reporting agencies that create consumer reports, like Experian, Equifax and Trans Union are charged with using reasonable procedures designed to ensure the maximum possible accuracy of the information they report. It is not enough for them to simply parrot information they receive from entities like EdFinancial, particularly where a consumer makes a dispute about information reported.

5.      When a consumer like Plaintiff disputes information through the CRAs, those disputes are transmitted to the party furnishing the information, here EdFinancial. The FCRA demands that each party separately conduct a reasonable investigation of the consumer's dispute and correct or delete information they learn to be inaccurate or cannot otherwise verify.

6.      Plaintiff brings claims under Section 1681e(b) against all three CRAs because they reported Plaintiff's inaccurate information regarding the accounts with EdFinancial.  When Plaintiff disputed these inaccuracies, the CRAs did not reasonably investigate also violating 1681i.

7.      The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how these Defendants have complied with their now 50-year-old obligation to conduct a meaningful accuracy investigation.   All Defendants have been repeatedly sued by consumers, sanctions by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what their customer-creditors instruct.  Had they followed that advice and heeded those warnings, the Plaintiff would not have been harmed.

8.      Likewise, EdFinancial violated the FCRA, § 1681s-2(b), when it received Plaintiff's disputes from the CRAs and failed to reasonably investigate those disputes. Instead, discovery will show all EdFinancial did was consult their own records about the accounts and confirm to the agencies the inaccurate information they were already reporting.

## JURISDICTION AND VENUE

9.       The jurisdiction for this Court is conferred by 15 U.S.C. § 1681p and 15 § U.S.C. 1681p.

10.      Venue is proper in this District and Division as the violations described in this Complaint occurred in this District, and each of the Defendants transact business within this District.

## PARTIES

11.      The Plaintiff is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c).

12.      Experian is a corporation, authorized to do business in the Commonwealth of Virginia through its registered agent located in Glen Allen, Virginia.

13.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) (hereinafter, a "CRA"). Upon information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

14.     Experian disburses such consumer reports to third parties under contract for monetary compensation.

15.     Equifax is a limited liability company, authorized to do business in the Commonwealth of Virginia through its registered agent in Richmond, Virginia.

16.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f), (hereinafter, a "CRA"). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

17.     Equifax disburses such consumer reports to third parties under contract for monetary compensation.

18.     Trans Union is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered agent in Richmond, Virginia.

19.     Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

20.     Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

21.     EdFinancial Services, LLC, is a foreign corporation, authorized to conduct business in the Commonwealth of Virgnia through its registered agent in Glen Allen, Virginia.

22.     EdFinancial is a "furnisher" as governed by 15 U.S.C. § 1681s-2.

### FACTUAL ALLEGATIONS

*Sections 1681e(b) and 1681i(a) of the Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of the Defendants' Creditor-Customers*

23.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. See S. Rep. No. 91-517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); id. at 36570 (statement of Rep. Sullivan); . . .. In enacting FCRA Congress adopted a variety of measures designed to ensure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc*., 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

24.     "Section 1681e(b) sets forth the CRAs' overall du[t]y:

(b) Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

*Burke,* 2011 WL 1085874, at *4.

25.  Section 1681i(a) on the other hand requires much more from a CRA after a consumer has placed it on notice of an inaccuracy through his dispute:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30-day period[.]

15 U.S.C.A. § 1681i(a)(1)(A).

26.     Section § 1681i(a) imposes "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

27.     It has long been the law that a CRA, such as Experian, Equifax or Trans Union, does not fulfill its "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See, e.g.*, *Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-CV-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *report & recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.")

28.     That "grave responsibility" imposed by the FCRA reinvestigation requirement" must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir.1997).

29.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

30.     Further, as the Defendants are aware, that even though the term "investigation" is not used in § 1681e(b), it is clear that Defendants have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

31.     Today, furnishers such as EdFinancial, have their own independent duties under the FCRA, principally those found at 15 U.S.C. §1681s-2.  But while the Defendants' duties under §1681e(b) were enacted in 1970 and have governed since, the duties on furnishers are much recent, enacted on in 1996.  THE CONSUMER CREDIT REPORTING REFORM ACT OF 1996, Pub. L. No. 104-208 (1996).

***The CRA Defendants Did Not and Do Not***
***Conduct Any Investigation of Most Consumer Disputes***

32.     Unknown to the Plaintiff until this lawsuit, it has long been the practice of Experian, Equifax and Trans Union to refuse to perform that statutorily mandated FCRA investigation and instead delegate all action in response to consumer disputes to a third-party outsource vendors located overseas. Equifax and Trans Union use a vendor, previously known as Intelenet Global Services and now as Teleperformance.

33.     Experian uses a sister company, Experian Chile (or Experian Costa Rica) to process its mail disputes.[1]

34.     Here is how the written mail dispute process actually works: for Equifax, a third-party document processing company in Atlanta maintains several Post Office boxes for receiving consumer mail to Equifax such as disputes, requests for a credit file disclosure, or other communication.  That mailbox company receives consumer disputes and scans them into a batch with other disputes.

35.     Trans Union, on the other hand, receives and scans the mail into batches directly out of its facility in Eastern Pennsylvania.

36.     Both Teleperformance and the Experian affiliate use low-wage employees to work quickly to process consumer dispute letters received, skimming the letters and selecting one or a

---

[1] Defendant Experian took a different route, outsourcing its dispute procedures to an affiliated company, Experian Services Chile, S.A, in Santiago, Chile. Experian long ago lost the argument that testimony from these dispute agents requires more than a garden-variety Rule 30 notice. *Calderon v. Experian Info. Sols., Inc.*, 290 F.R.D. 508, 510 (D. Idaho 2013). Such was confirmed in a recent case in this District with Plaintiff's Counsel opposing, wherein Experian produced its Chilean dispute investigator for remote deposition through a Rule 30(b)(1) notice without opposition. *Sublett v. Nissan of Richmond, LLC, et al.*, No. 3:20-cv-156 (E.D. Va.). To the extent Experian would argue here that it cannot produce its Chilean dispute agents pursuant to a Rule 30 notice, then Plaintiff will pursue his 1681i failure-to-investigate claim on the same theory—no investigation was conducted by the CRA—as he alleges against Trans Union for its farming-out investigations to Teleperformance.

handful of codes from a dropdown menu to best describe the consumer's detailed dispute information in 2 digits

37.     These dispute agents with Teleperformance and Experian Chile are not allowed to do any of these things: contact the consumer; use the telephone or e-mail to investigate; research; contact the furnisher directly; or take longer than 5 minutes per dispute.

38.     The dispute processing agents are not hired to perform actual FCRA investigations. Instead, the agent's sole responsibility is to read consumer dispute letters, select one of a handful of common dispute codes from a drop-down menu and then click that code.

39.     In fact, all three credit reporting agencies strongly encourage consumers to make disputes through their online websites. When consumers do so, the consumer has to click one of just a few available dispute reasons (such as "The balance and/or past due amount are/is incorrect"). The online dispute then is outputted into the "e-Oscar" system described below without ever touching human hands or being read by human eyes at Experian, Equifax and TransUnion. It gets sent to Defendant CRAs' creditor customer (such as EdFinancial) for its sole review and consideration.

40.     Both Equifax and Trans Union have taken the position in other litigation that it has no control over Teleperformance. For example, under oath before another court, Equifax's representative employee testified: "Intelenet has no corporate affiliation with Equifax. Intelenet is not a corporate partner of Equifax. Rather, Intelenet is a company wholly separate from Equifax and is a party to a contract with Equifax wherein Equifax hired Intelenet to assist Equifax with various matters. Neither Mr. Negi nor Mr. Singh [the dispute processing agents] are employees of Equifax." *Miller v. Equifax Info. Serv.*, Case No. 4:19-cv-584, ECF 47-1 (M.D. Fla. Sept. 18,

2020). And in its briefing in that same case, Equifax argued, "Courts have determined that Intelenet is a separate legal entity, not controlled by a party."

41. Trans Union has taken and succeeded with this same position. *See, e.g.*, *Wilcox v. Servis One, Inc*., No. 1:19-cv-02545-RDB (D. Md.), ECF 71 (ruling that Trans Union did not have control or the ability to produce for deposition Indian employees of Intelenet).

42. Regardless of whether these statements by the CRAs are correct, the CRAs believe that they cannot direct, control, manage or reliably influence the employees of their respective third-party outsource vendors.

43. Experian, Equifax and Trans Union themselves did not conduct any reinvestigation of Plaintiff's disputes. Instead, they merely caused them to be removed from their control to be saved within a database by an overseas data-processing vendor.

***The CRA Defendants Forwarded Plaintiff's Disputes to EdFinancial, Who Did Nothing***

44. In each instance in which Plaintiff disputed the EdFinancial accounts with the CRAs, each forwarded Plaintiff's disputes to EdFinancial using an electronic system called "e-Oscar," which is an industry-wide process by which such disputes are electronically communicated to furnishers and dispute results back to the CRAs.

45. e-Oscar is also the system by which EdFinancial has agreed it will accept such consumer disputes from the CRAs.

46. Under such circumstances, EdFinancial became obligated under the FCRA to investigate Plaintiff's disputes.

47. Plaintiff's disputes to EdFinancial, made in an attempt to have it reinvestigate his complaints, went unanswered, as it still continues to report the derogatory payment history regarding the Plaintiff.

10

48.     EdFinancial failed to reinvestigate Plaintiff's complaints.

49.     The information furnished by EdFinancial to Experian, Equifax and Trans Union was at all times inaccurate.

50.     On or about a date better known to Experian and EdFinancial, Experian furnished Plaintiff's disputes to EdFinancial.

51.     On or about a date better known to Equifax and EdFinancial, Equifax furnished Plaintiff's disputes to EdFinancial.

52.     On or about a date better known to Trans Union and EdFinancial, Trans Union furnished Plaintiff's disputes to EdFinancial.

53.     EdFinancial failed to reasonably reinvestigate Plaintiff's disputes that EdFinancial received from CRAs in violation of § 1681s-2(b)(1)(A) of the FCRA.

54.     Defendant EdFinancial further violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's disputes from the CRAs and prior to the commencement of this action.

## Statement of Facts

55.     Plaintiff sent multiple disputes to Experian, Equifax, and Trans Union, regarding inaccurate loan accounts associated with EdFinancial that were contained within his consumer credit files produced by the CRAs.

56.     To date, none of the Defendants have corrected Plaintiff's consumer credit file, despite Plaintiff disputing the inaccurate information multiple times.

57.     Plaintiff disputed the inaccurate EdFinancial accounts to the three CRAs in approximately October 2023.

58.     Experian and Trans Union did not respond to Plaintiff's disputes.

11

59.     Plaintiff disputed the inaccurate EdFinancial accounts to the three CRAs in approximately January 2023.

60.     None of the CRAs responded.

61.     Defendants never contacted Plaintiff to conduct any further investigation and, based upon information and belief, failed to perform any meaningful follow up to Plaintiff's disputes that would amount to an investigation of the disputed inaccurate information.

62.     Defendants have continued to report the in the inaccurate EdFinancial accounts on Plaintiff's credit reports, despite being notified that this information was false.

63.     Plaintiff has been attempting to resolve these matters with Defendants and his credit opportunities were limited by Defendants' failure to correct the inaccurate reporting.

64.     As a result of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

a.     Stress associated with being denied the ability to improve his credit score or access higher lines of credit;

b.     Monies lost by attempting to fix his credit, e.g. communication costs, postage for disputes;

c.     Loss of time attempting to cure the error;

d.     Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life;

e.     Stress associated with attempting to resolve this matter.

***Defendants' Conduct Was Willful***

65.     The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co.*

*of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

66.     Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 151 (4th Cir. 2008).

67.     As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The CRA's dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

68.     The CRAs have received many thousands of disputes and other complaints regarding the creditors at issue in this case-sufficient to require a reasonable company to at least examine or investigate further before blindly accepting further reporting.

69.     In many or even most of these FCRA lawsuits brought by a consumer, one or more of the CRA Defendants was a named co-defendant.

70.     The CRAs knew or should have known of this litigation history. They use and have access to PACER to investigate and monitor such consumer complaints.

71.     The CFPB has maintained a Consumer Complaint database since 2017. It receives a small percentage of the total consumer credit reporting complaints made nationwide, as many multiples more are made directly to the Defendants, and/or to other government agencies, attorneys, or non-profit organizations.

72.     Each Defendant regularly receives unredacted consumer dispute details from this database.

73.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Experian.

74.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Equifax.

75.     Since the database began accepting complaints in 2017, the CFPB has sent hundreds of thousands of consumer credit reporting complaints to Trans Union.

76.     Further, over 190,000 of the CFPB complaints against Equifax, more than 160,000 complaints as to Trans Union, and over 145 complaints against Experian were based largely on each CRAs failure to reasonably investigate consumer disputes.

77.     Just in the last 12 months alone, Experian, Equifax and Trans Union have each been sued on by consumers alleging their violation of the FCRA over 2,000 times. Most of these alleged that Experian, Equifax and Trans Union violated § 1681i(a) by failing to conduct a lawful reinvestigation of the consumer's accuracy dispute. This complaint history has been true for nearly every year over the last decade.

78.     While the thousands of consumer complaints and hundreds of thousands of consumer disputes alone would have put Experian, Equifax and Trans Union on notice of the failures of its dispute investigation procedures in ensuring accuracy, numerous Federal District and Circuit Courts have placed the CRA Defendants on notice that they may not merely "parrot" what their creditor- customer tells them if the consumer had provided a substantive and detailed dispute.

79. Experian, Equifax and Trans Union have had had actual notice from numerous other courts that its blind ACDV "parroting" was unlawful. *See, e.g., Centuori v. Experian Info. Sols., Inc*., 431 F. Supp. 2d 1002, 1008 (D. Ariz. 2006) ("'The grave responsibility imposed by [the FCRA] must consist of something more than merely parroting information received from other sources.'"). *Schweitzer v. Equifax Info. Sols. LLC*, 441 F. App'x 896, 904 (3d Cir. 2011); *Pourfard v. Equifax Info. Sols*. *LLC*, 2010 WL 55446 (D. Or. Jan. 7, 2010) ("[T]he caselaw is clear that a reporting agency does not act reasonably under the FCRA by deferring entirely to another source of information."); *Bradshaw v. BAC Home Loans Servicing, LP*, 816 F. Supp. 2d 1066, 1073-74 (D. Or. 2011)("[Equifax] instead utilized an automated dispute system to verify the accuracy of plaintiffs' account. Many courts, including this one, have concluded that when a CRA is affirmatively on notice that information received from a creditor may be suspect, it is unreasonable as a matter of law for the agency to simply verify the creditor's information through the ACDV process without additional investigation.").

80. Equifax has even been warned by its home District Court, the Northern District of Georgia, which detailed:

> Equifax argues that the creditor is the party responsible for investigating the dispute, once notified of it by the reporting agency. 15 U.S.C.A. § 1681s-2(b) (1998). According to Equifax, the reporting agency's duty under § 1681i is fulfilled once it forwards the complaint to the creditor, the entity in the best position to undertake an accurate investigation. Under § 1681s-2(b), furnishers of information, such as creditors, have certain duties to investigate consumers' disputes. Yet, this does not end the inquiry, or establish that the reporting agency has no responsibility beyond serving as a conduit for consumers' complaints.
>
> To the contrary, a credit reporting agency does not conduct a reasonable investigation by deferring entirely to another source of information. "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson,* 987 F.2d at 293. The FCRA "places the burden of investigation squarely on" the reporting agency. *Id.*; *see also Henson v. CSC Credit*

*Servs.,* 29 F.3d 280, 286-87 (7th Cir. 1994); *Swoager v. Credit Bureau,* 608 F.Supp. 972, 976 (M.D. Fla.1985).

*Sampson v. Equifax Info. Servs., LLC*, No. CIV.A. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005).

81.     Trans Union has long been on even clearer notice. The seminal Circuit Court decision addressing § 1681i(a) and finding that a CRA does not conduct a reasonable reinvestigation of a consumer's substantive dispute if it merely "parrots" its creditor-customer was a TransUnion case. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). TransUnion's notice was so substantial that one District Court instructed the jury in a § 1681i(a) trial:

> In assessing the issue of notice to Trans Union, you are instructed that, on several occasions since 1997, decisions of federal courts have informed . . . that the Fair Credit Reporting Act's Requirement for a reasonable reinvestigation must consist of something more than simply the parroting of information received from other sources and/or that a credit reporting agency does not act reasonably by deferring entirely to another source of information, such as a creditor.

*Mullins v. Equifax Info. Servs., LLC*, No. CIV. 3:05-cv-888 (E.D. Va. Aug. 27, 2007).

82.     Defendants have also been repeatedly criticized by Federal and state regulators, and consumer groups for the refusal or failure to conduct substantive reinvestigations.

83.     In 2015, a large group of state Attorneys General forced a consent order from the CRA Defendants by which they were required to develop procedures necessary to comply with the FCRA.  The AG Settlement required amongst many changes and mandates that the Defendant comply with § 1681i(a).[2]

---

[2] *Available at* https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News- Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx.

84.     The AG Settlement also required the CRA Defendants to conduct significant research and data gathering-even creating a "working group" to address these issues, and to develop special procedures to handle disputes as in this case. Notwithstanding these requirements, the Defendants did not meaningfully comply with the AG Settlement in these regards.

85.     Defendants are also aware of substantive and detailed criticism by public interest groups about its automated dispute system. For example, in 2009, the National Consumer Law Center ("NCLC"), the organization that publishes the leading legal treatise in this field, also published a scathing research paper detailing the actual process followed by Defendants when a consumer makes a dispute. That report was updated in 2019. AUTOMATED INJUSTICE REDUX Ten Years after a Key Report, *Consumers Are Still Frustrated Trying to Fix Credit Reporting Errors*, National Consumer Law Center, February 2019. ("NCLC Report").[3]

86. The NCLC Report summarized its context:

> Ten years ago, the National Consumer Law Center (NCLC) issued Automated Injustice: How a Mechanized Dispute System Frustrates Consumers Seeking to Fix Errors in their Credit Reports, the landmark report on the serious dysfunctions in the American credit reporting system. Since then, the Consumer Financial Protection Bureau (CFPB) began exercising supervision authority over the Big Three credit bureaus (Equifax, Experian and TransUnion), and started the difficult task of compelling them to reform their procedures and practices. A coalition of more than 30 state Attorneys General reached a breakthrough settlement with the credit bureaus in 2015, requiring an array of reforms. Despite these very laudable achievements, the credit bureaus and the companies that supply them with information still have serious problems in ensuring the accuracy of credit reports, affecting millions of American consumers. The dispute process required by the Fair Credit Reporting Act (FCRA) that was intended to fix these problems remains ineffective and biased.

87. Among many of the Defendants' accuracy failures, the NCLC Report discovered:

---

[3] *Available at* https://www.nclc.org/images/pdf/credit_reports/automated-injustice-redux.pdf.

• **Insufficient Information Conveyed and Considered in Investigation**. Credit bureaus use the highly automated e-OSCAR system to convey disputes to furnishers, primarily using shorthand two- or three-digit codes, and at most only a line or two of text in a minority of instances. The credit bureaus use the same four or five codes over 80% of the time.

• **Failure to Transmit Information Submitted by the Consumer**. Credit bureaus failed to send supporting documentation submitted by consumers to furnishers, in clear violation of the FCRA.

• **Perfunctory Credit Bureau Investigations**. Credit bureaus limit the role of their employees who handle disputes, or of the foreign workers employed by their offshore vendors, to little more than selecting these two- or three-digit codes. Workers do not examine documents, contact consumers by phone or email, or exercise any form of human discretion in resolving a dispute.

• **Credit Bureaus Always Side with Furnishers**. Credit bureaus are universally biased in favor of furnishers and against consumers in disputes. In a practice known as "parroting," credit bureaus blindly adopted the response of the furnisher without performing any independent review.

NCLC Report at 6.

88.     Despite the notice and judicial, regulatory, and public interest criticism, Defendants have refused to change their dispute investigation process because it would cost too much money to do so.

89.     The CRA's procedures imposed on the Plaintiff and similarly situated consumers an unjustifiably and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## COUNT I: VIOLATION OF THE FAIR CREDIT REPORTING ACTION
### 15 U.S.C. § 1681e(b)
### (Experian, Equifax and Trans Union)

90.     The Plaintiff re-alleges and incorporates each of the above paragraphs as if fully set out herein.

91.     Defendants Experian, Equifax and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintained concerning the Plaintiff.

92.     As a result of this conduct, action, and inaction of Experian, Equifax and Trans Union, the Plaintiff actual damages, including but not limited to:  loss of credit, damage to reputation, embarrassment, frustration, humiliation, and other mental, and emotional distress

93.     The violations by Experian, Equifax and Trans Union were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, if Defendants are negligent, Plaintiff is entitled to recover under 15 U.S.C. § 1681o.

94.     Plaintiff is entitled to recover costs and attorneys' fees from Experian, Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II:  VIOLATION OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. §1681i
## (Experian, Equifax and Trans Union)

95.     The Plaintiff re-alleges and incorporates all other factual allegations set forth in the Complaint.

96.     Experian, Equifax and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from the Plaintiff's credit files.

97.    Experian, Equifax and Trans Union each violated 15 U.S.C. § 1681i(a)(3) by failing to notify Plaintiff of any determination made not to investigate his disputes.

98.    Experian, Equifax and Trans Union each violated 15 U.S.C. §1681i(a)(4) by failing to consider all relevant information submitted by Plaintiff.

99.    Experian, Equifax and Trans Union each violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit files or modify the item of information upon a lawful reinvestigation.

100.    As a result of Experian, Equifax and Trans Union's violations of 15 U.S.C. § 1681i(a), the Plaintiff suffered actual damages, including but not limited to:  loss of credit, damage to reputation, frustration, embarrassment, humiliation, and other mental and emotional distress.

101.    The violations by Experian, Equifax and Trans Union were willful rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax, Experian and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681n.  In the alternative, Experian, Equifax and Trans Union were negligent, entitling Plaintiff to recovery under 15 U.S.C. §1681o.

102.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Experian, Equifax and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

**COUNT III:**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681s-2(b)(1)(A)-(D)**
**(EdFinancial)**

103.    The Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

104.     EdFinancial violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

105.      EdFinancial violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the CRAs.

106.     On one or more occasions within the past two years, by example only and without limitation, EdFinancial violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the false information within Plaintiff's credit files with the CRAs in response to his disputes without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to the CRAS.

107.     EdFinancial violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from Trans Union, Equifax, and Experian prior to the commencement of this action. This failure to correct Plaintiff's information resulted from EdFinancial's failure to investigate as articulated herein, after EdFinancial received notice of Plaintiff's dispute from Trans Union, Equifax, and Experian.

108.     As a result of these violations of 15 U.S.C. § 1681s-2, Plaintiff suffered actual damages including but not limited to:  loss of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

109.     Based on the manner in which the CRAs responded to – or did not respond to Plaintiff's disputes, representing that EdFinancial had "verified" the supposed accuracy of its reporting, Plaintiff alleges Experian, Equifax and Trans Union, did in fact forward the Plaintiff's dispute via an ACDV to EdFinancial.

110.     On information and belief, Plaintiff alleges that EdFinancial rarely if ever adds the notation that the account is disputed when it responds to the e-Oscar ACDVs.

111.    Plaintiff's disputes were, at a minimum, bona fide.

112.    EdFinancial's violations were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, EdFinancial was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

113.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from EdFinancial in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment and actual, statutory, and punitive damages against Defendants, jointly and severally; for his attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, specific performance and injunctive relief, and such other relief the Court does deem just and proper.

Respectfully submitted,
**JASON CRUZ**

By:  ___*s/  Leonard A. Bennett*_____
Leonard A. Bennett, VSB #37523
Tara Keller, VSB #91986
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email:  lenbennett@clalegal.com
Email:  tara@clalegal.com

*Counsel for the Plaintiff*